# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULES JETTE | : | CIVIL ACTION |
| v. | : | |
| STEVEN GLUNT, et al | : | NO. 12-cv-02379-PD |

## **MEMORANDUM & ORDER**

Mr. Jette seeks discovery in support of his habeas claim. *See* Doc. No. 64. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Instead, the petitioner must seek discovery pursuant to the Rules Governing Section 2254 Cases. Under these rules, a district court judge "may, for good cause, authorize a party to conduct discovery." Rule 6(a); *see also Williams v. Beard*, 637 F.3d 195, 209 (3d Cir. 2011) ("We review the District Court's denial of a discovery request for abuse of discretion.").

To establish "good cause," the petitioner must make specific allegations that demonstrate "reason to believe that the petitioner may, if the facts are fully developed, be able to" show that he or she is entitled to relief. *Bracy*, 520 U.S. at 909 (quoting *Harris v. Nelson*, 394 U.S. 286 (1969)); *see also Lee v. Glunt*, 667 F.3d 397, 404 (3d Cir. 2012) ("A habeas petitioner may satisfy the 'good cause' standard by setting forth specific factual allegations which, if fully developed, would entitle him or her to the writ.") (quoting *Williams*, 637 F.3d at 209)). This means the petitioner must "point to specific evidence that might be discovered that would support a constitutional claim." *Jones v. Gavin*, No. 14-804, at 1 n.1 (E.D. Pa. May 18, 2015) (quoting *U.S. ex rel. Adonai-Adoni v. Prison Health Servs.*, No. 06-4491, 2007 WL 2407281, at *1 (E.D. Pa.

Aug. 20, 2007)) (order granting motion for discovery); *see also Payne v. Bell*, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000) ("Petitioner need not show that the additional discovery would definitely lead to relief. Rather he need only show good cause that the evidence sought would lead to relevant evidence regarding his petition."). Consequently, "bald assertions" and "conclusory allegations" do not establish good cause. *Green v. Vaughn*, No. 03-1052, 2005 WL 806705, at *1 (E.D. Pa. April 7, 2005) (quoting *Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir. 1994)). "Fishing expeditions" are not allowed. *See, e.g.*, *Williams*, 637 F.3d at 210–11; *Marshall v. Beard*, No. 03-3308, 2010 WL 1257632, at *2 (E.D. Pa. Mar. 30, 2010) (quoting *Deputy*, 19 F.3d at 1493 (3d Cir. 1994)).

In making the "good cause" determination, the court should consider the "essential elements" of the petitioner's underlying habeas claim. *Id.* at 904. Courts also consider the petitioner's diligence in developing the record in state court. *See, e.g.*, *Tedford v. Beard*, No. 09-409, 2010 WL 3885207, at *5–6 (E.D. Pa. Sept. 28, 2010) (collecting cases); *Hooks v. Workman*, 606 F.3d 715, 730 n.14 (10th Cir. 2010) ("Only when a petitioner diligently sought to develop the factual basis of a habeas claim in state court can he utilize the procedures set out in Rules 6 and 7.").

After a bench trial, Mr. Jette was convicted of involuntary deviate sexual intercourse, endangering the welfare of a child, and corrupting the morals of a minor. In his supplemental memorandum of law to support his habeas petition, Mr. Jette alleges that his trial counsel was ineffective for failing to investigate, develop, and present exculpatory and impeachment evidence, including, among others, the Department of Human Services' ("DHS") file from their 1995 investigation into the sexual abuse allegations against Mr. Jette. *See* Doc. No. 61, at 29. *Id.* The victim, J.R., first reported the abuse to the police in 1995, when he was ten years old. *See* N.T. 10/1/2001, at 98–

101 (testimony of Joanne R.). At that time, Mr. Jette was not charged based on the information that J.R. provided to the police. *See id.* at 101. J.R. also testified that he spoke to someone other than a policeman, perhaps a social worker, in 1995. N.T. 10/1/2001, at 58–59. Attached to one of Mr. Jette's *pro se* state court filings there is a letter from the Department of Public Welfare stating that there was a report of suspected child abuse concerning J.R. that was determined to be "[i]ndicated," that the investigation produced "substantial evidence of what constitutes an abused child," and that the case was being closed. Doc. No. 63, at 443 (App'x to Pl. Memo. of Law). This letter is dated March 31, 1995. *Id.* Approximately five years later, in 2000, the police reopened their investigation into J.R.'s allegations, interviewing him for a second time. *Id.* at 116–18 (testimony of Detective Kenneth Roach). During this interview, J.R. detailed the abuse he suffered, *see id.*, and the police subsequently charged Mr. Jette.

**Department of Human Services' ("DHS") file.**

In his discovery motion, Mr. Jette requests "[a]ny and all documents, reports, logs, memoranda, regarding Department of Human Services files relating to Petitioner and/or J.R." *See* Doc. No. 64, at 7 (proposed order). He claims that this file "would have contained prior inconsistent statements from [the victim, J.R.] and [the victim's mother and petitioner's ex-wife, Joanne R.], interviews with [the victim's brother, F.R.], and reports from the investigators or medical professionals that could have helped disprove J.R.'s allegations." Doc. No. 61, at 29. The Commonwealth opposes this request, arguing that these claims are procedurally defaulted, and, in the alternative, Mr. Jette has not demonstrated good cause to justify discovery: Mr. Jette's requests are speculative, and he never requested the discovery in state court. Doc. No. 73, at 44–47.

Considering Mr. Jette's habeas claims and requests for discovery, I find he has established good cause to allow limited discovery of the DHS file. For purposes of this motion, I assume without deciding that his ineffective assistance of counsel claim is not procedurally defaulted. *See Jones*, No. 14-804, at 1 n.1.[1] The DHS file's contents will be relevant to the question of whether Mr. Jette's *Martinez* claim is meritorious, because one feature the district court must consider when weighing a *Martinez* claim is the potential prejudice occasioned by the alleged ineffectiveness of PCRA counsel. *See Martinez v. Ryan*, 566 U.S. 1 (2012). Mr. Jette has also established that the DHS file may support his ineffectiveness claims, if the facts are further developed. The DHS file likely contains statements from J.R. that are inconsistent with his trial testimony, especially considering (1) J.R. provided other inconsistent statements to authorities in 1995, and (2) Mr. Jette was not charged for this abuse until 2000. Mr. Jette may be able to use these inconsistent statements to support his claim that his trial counsel was ineffective for failing to obtain these statements that could have been used to impeach J.R.'s trial testimony. Accordingly, I find that Mr. Jette has established good cause for limited discovery, and his request should be granted to the extent the file contains records or reports of interviews with J.R.

There remains the question of whether the DHS file still exists. In his supplemental memorandum of law, Mr. Jette explained that after his trial he requested "a copy of the [DHS] file but was informed that it had been destroyed." Doc. No. 61, at 4 n.4. The Commonwealth asserts that it is not in the prosecution's trial file. Doc. No. 73, at 47. For this reason, I am ordering the Commonwealth to provide an affidavit

---

[1] I do so not to suggest that Mr. Jette's *Martinez* claim will be upheld, but only to cut through the procedural knot created by attempting to evaluate counsel's effectiveness at both the PCRA stage and trial stage without having pinned down exactly what it is counsel is alleged not to have looked at.

describing their efforts to locate this file, by August 26, 2019, if they assert it is no longer in the possession of DHS. The Commonwealth should also provide an affidavit from the appropriate custodian of DHS asserting that a diligent search has been made and the file has not been found.

**J.R.'s juvenile adjudication records.**

Mr. Jette argues that his trial counsel was ineffective for failing to obtain J.R.'s juvenile adjudication records. He contends that these records would have "provided valuable impeachment material and evidence of a motive for J.R. to fabricate his allegations against Mr. Jette." Doc. No. 61, at 29–30. In his discovery motion, Mr. Jette specifically requests these records, including "the facts underlying his conviction, any assessments performed on J.R., the records of his probation and/or juvenile placement, and the transcripts of any hearings." Doc. No. 64, ¶ 11. He alleges that the "allegations of sexual assault would have been relevant to J.R.'s placement, sentencing, and treatment in juvenile court," and therefore relevant to Mr. Jette's criminal case. *Id.* The Commonwealth opposes this request on the basis that Mr. Jette's ineffectiveness claims are procedurally barred. Doc. No. 73, at 44–45. Alternatively, the Commonwealth argues that Mr. Jette has established "good cause" because he allegedly did not request the file in state court and J.R.'s juvenile adjudication record is irrelevant to his abuse allegations and inadmissible under Pennsylvania law. *Id.* at 45–47.

I agree with the Commonwealth that Mr. Jette has not established good cause for this discovery. Under Pennsylvania law, there are limited circumstances where juvenile adjudication evidence is admissible for impeachment purposes. *See* Pa. R. Evid. 609(d). Evidence of juvenile adjudications are admissible only in criminal cases to impeach a witness' credibility, "if conviction of the offense would be admissible to attack the

5

credibility of an adult." *Id.* This means that the juvenile adjudication could only be admitted "if it involved dishonesty or false statement." *See* PA. R. EVID. 609(a). Mr. Jette has not alleged that J.R.'s juvenile adjudication involved a *crimen falsi* crime (in fact, his briefing does not even specify the crime he believes J.R. committed).[2] If the evidence is inadmissible, then it would not support his ineffectiveness claim.

To the extent Mr. Jette is arguing that the adjudication records could come in for some other permissible purpose, Mr. Jette has only made conclusory allegations, failing to point to specific evidence that would if fully developed entitle him to relief. He simply is requesting to go on an exploratory expedition into J.R.'s records, and this is not allowed. Accordingly, Mr. Jette has not established "good cause" for the discovery. I will direct the Commonwealth to file an affidavit advising whether J.R.'s record of juvenile adjudication included any *crimen falsi* offenses.

**Complete copy of "My Life" story.**

In his supplemental memorandum of law, Mr. Jette argues that his trial counsel was constitutionally ineffective for failing to request the final page of the victim's "My Life" story. Doc. No. 61, at 40–42. The "My Life" story was written by J.R. two years before trial, and the story documented some of the allegations of abuse. *See* N.T. 10/1/2001, at 33–36. Before trial, the prosecutor had faxed Mr. Jette's trial counsel part of the story, indicating that J.R. had not given her the last page because it was not relevant to Mr. Jette and J.R. preferred not showing it to the prosecutor. Doc. No. 63, at 538. The prosecutor told trial counsel that she could obtain that last page if he wanted it.

---

[2] Based on the parties' submissions, the only indication to the nature of the alleged juvenile adjudication appears to be from the Commonwealth's brief. *See* Doc. No. 73, at 26. The Commonwealth suggests that the juvenile adjudication was for a supposed "gun offense." Because I do not know if this is the only offense or it involved *crimen falsi*, I am directing the Commonwealth to provide an affidavit addressing whether the juvenile adjudication included any *crimen falsi* offenses.

*Id.* At trial, the prosecution introduced the story, *see id.*, and Mr. Jette's trial counsel used it to cross-examine J.R., highlighting the inconsistencies with his trial testimony. *See id.* at 45–85 (cross-examination of J.R.). Mr. Jette now alleges that his trial counsel was ineffective for never requesting the complete document. Doc. No. 61, at 40–42.

Here, Mr. Jette requests the complete version of the "My Life" story. Doc. No. 64, ¶ 10. He claims that it likely contains additional impeachment or exculpatory evidence, supporting his claim of his trial counsel's ineffectiveness. Doc. No. 61, at 42. The Commonwealth contends that this request should be denied because (1) Mr. Jette's ineffectiveness claim is procedurally barred, (2) he did not request this discovery in state court, and (3) the request is too speculative. Doc. No. 73, at 44–47.

I find that Mr. Jette has established good cause for limited discovery on this issue. Again, assuming without deciding that the ineffectiveness claim can proceed in federal court, Mr. Jette has established that the remaining page(s) may have evidence to support his claim. The "My Life" story was part of trial counsel's cross-examination of J.R., using it to impeach J.R.'s testimony. The last page of the story does not appear to have been entered into evidence, as trial counsel elicited testimony from J.R. that pages were redacted. *See* N.T. 10/1/2001, at 45–46. Mr. Jette has demonstrated that if the facts are fully developed, there may have been additional impeachment or exculpatory evidence in the remaining pages, which is relevant to his ineffectiveness claim.

A question remains whether the remaining page(s) of the "My Life" story still exist. *See* Doc. No. 73, at 47 ("[T]he omitted page of the victim's story are not in the prosecution's trial file, and there is no indication that the prosecution ever possessed [it]."). For this reason, I am directing the Commonwealth to file an affidavit indicating whether the document exists. The Commonwealth should question J.R. and his mother,

7

as well as searching its own files. If the document exists, I will conduct an *in camera* examination to determine whether it is appropriate for the document to be produced to the parties.

For good cause shown, this 25th day of July, 2019, upon consideration of Petitioner Jules Jette's Supplemental Memorandum of Law (Doc. No. 61), his Motion for Discovery (Doc. No. 64), and the Commonwealth's Response in Opposition (Doc. No. 73), it is

**ORDERED**

As follows:

1. Mr. Jette's request for "[a]ny and all documents, reports, logs, memoranda, regarding Department of Human Services files relating to [Mr. Jette] and/or J.R." is **GRANTED** in part. *See* Doc. No. 64, at 7. The Commonwealth is directed to file a response indicating whether the DHS file from 1995, regarding the investigation into J.R.'s allegations of abuse against Mr. Jette, exists. If the file no longer exists, an affidavit shall be filed along with the response, detailing the efforts the Commonwealth underwent in search of the file. The Commonwealth should also file an affidavit from the appropriate custodian of DHS, asserting that a diligent search has been made and the file has not been found. If the file does exist, then the Commonwealth is instructed to produce all records or reports of interviews with J.R, whether they are verbatim or summaries. The Commonwealth must file their response and affidavits by **August 26, 2019**.

2. Mr. Jette's request for "[a]ny and all documents, reports, logs, memoranda, regarding J.R.'s juvenile adjudication case" is **DENIED**. The Commonwealth is ordered to file an affidavit declaring whether or not J.R.'s juvenile record includes any *crimen falsi* offenses. The affidavit will be filed by **August 26, 2019.**

3. Mr. Jette's request for a "complete copy of the 'My Life' story, a portion of which was admitted into evidence at trial" is **GRANTED** in part. The Commonwealth is directed to determine whether a complete copy of the "My Life" story presently exists, if necessary by interviewing J.R. and/or J.R.'s mother. The Commonwealth will file this affidavit by **August 26, 2019**. If a complete copy of the "My Life" story exists, then it shall be produced to me by **August 26, 2019,** for an *in camera* examination to determine whether the document should be produced to the parties.

BY THE COURT:

*s/Richard A. Lloret*
RICHARD A. LLORET
U.S. Magistrate Judge